IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> ARLYN DALE JOHNSON, <br><br> Defendant. | No. CR15-3035-MWB <br><br> ***REPORT AND RECOMMENDATION ON MOTION TO DISMISS*** |

Defendant Arlyn Dale Johnson (Johnson) has filed a motion (Doc. No. 17) to dismiss the indictment with prejudice. Plaintiff (the Government) has filed a resistance (Doc. No. 36). The Honorable Mark W. Bennett, United States District Judge, has referred the motion to me for preparation of a report and recommended disposition. I find that oral argument is not necessary and would cause undue delay. *See* N.D. Ia. L.R. 7(c). The motion is fully submitted and ready for decision.

## I.  *FACTUAL AND PROCEDURAL BACKGROUND*

On August 20, 2015, the Grand Jury returned a single-count indictment (Doc. No. charging Johnson with possession of a firearm by a prohibited person in violation of 18 U.S.C. § 922(g)(4), which states:

> It shall be unlawful for any person . . . who has been adjudicated as a mental defective or who has been committed to a mental institution . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(4).  The indictment alleges as follows, in relevant part:

> From about June 2015 through August 2015, in the Northern District of Iowa, defendant Arlyn Dale Johnson, having been adjudicated a mental defective and having been previously committed to a mental institution did knowingly possess, in and affecting interstate commerce, firearms, namely: a Remington Model 700 rifle, serial number S6250083; a Ruger SP101 revolver, .357 caliber, serial number 575-52093; and a Ruger 10/22 rifle .22 caliber, serial number 239-54986.
>
> This was in violation of Title 18, United States Code, Sections 922(g)(4) and 924(a)(2).

Doc. 2 at 1. Johnson has entered a plea of not guilty. His trial is scheduled to begin February 1, 2016.

Johnson filed his motion to dismiss on December 18, 2015. He relies on various medical records to establish certain facts and argues:

(1) that he has never "been adjudicated as a mental defective," as that term is used in Section 922(g)(4); and

(2) that while he has been previously committed to a mental institution, in light of his particular characteristics it would violate his Second Amendment rights to apply Section 922(g)(4) to prohibit his possession of firearms.

Doc. No. 17-1 at 10; Doc. Nos. 17-2 through 17-7. The Government filed its resistance on January 8, 2016.

## II. APPLICABLE STANDARDS

Johnson does not identify the particular rule(s) of criminal procedure under which he presents his motion. Federal Rule of Criminal Procedure 12(b) authorizes pretrial motions to present "any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). Certain defenses and objections are waived if not raised by pretrial motion, including "a defect in the indictment" and "failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B). An

2

indictment is defective, and thus subject to pretrial challenge pursuant to Fed. R. Crim. P. 12(b)(3)(B), if it alleges a violation of a statute that is unconstitutional. *See, e.g.*, *United States v. Brown,* 715 F. Supp. 2d 688, 689-90 (E.D. Va. 2010) (citing *In re Civil Rights Cases*, 109 U.S. 3, 8–9 (1883)).

A motion to dismiss for failure to state an offense pursuant to Rule 12(b)(3)(B)(v) may attack the sufficiency of the allegations but not the sufficiency of the *evidence*: "It has long been settled that an indictment is not open to challenge on the ground that there was inadequate or insufficient evidence before the grand jury." *United States v. Nelson*, 165 F.3d 1180, 1182 (8th Cir. 1999) (citing *Costello v. United States*, 350 U.S. 359, 363–64 (1956)). Such a motion may be granted only if no reasonable construction of the indictment can be said to charge the offense. *United States v. Nabors,* 45 F.3d 238, 240 (8th Cir. 1995) (quoting *United States v. Peterson*, 867 F.2d 1110, 1114 (8th Cir. 1989)). This means an indictment will survive a motion to dismiss "if it contains all of the essential elements of the offense charged, fairly informs the defendant of the charges against which he must defend, and alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to a subsequent prosecution." *United States v. Carter*, 270 F.3d 731, 736 (8th Cir. 2001). In reviewing the sufficiency of an indictment, the court must accept the Government's allegations as true. *United States v. Steffen*, 687 F.3d 1104, 1107 n.2 (8th Cir. 2012).

The rules of criminal procedure do not permit the functional equivalent of a motion for summary judgment, whereby a defendant may test the sufficiency of the Government's evidence in advance of trial. *See, e.g.*, *United States v. Ferro*, 252 F.3d 964, 968 (8th Cir. 2001) (citing cases); *accord Nabors*, 45 F.3d at 240 ("There being no equivalent in criminal procedure to the motion for summary judgment that may be made in a civil case, *see* Fed.R.Civ.P. 56(c), the government has no duty to reveal all of its proof before trial."). Any challenge to the sufficiency of the evidence must await trial,

when the defendant may move for acquittal pursuant to Rule 29 after the Government rests. *Ferro*, 252 F.3d at 968 (citing *United States v. DeLaurentis*, 230 F.3d 659, 661 (3d Cir. 2000)).

## *III. DISCUSSION*

As noted above, Section 922(g)(4) prohibits the possession of firearms by "any person . . . who has been adjudicated as a mental defective or who has been committed to a mental institution." 18 U.S.C. § 922(g)(4). Thus, there are two alternative theories of statutory prohibition. The statute applies to any person who has either (a) been adjudicated as a mental defective (the adjudication theory) or (b) been committed to a mental institution (the commitment theory).

The indictment alleges that Johnson falls within both theories. That is, it asserts that Johnson possessed firearms while "having been adjudicated a mental defective **and** while having been previously committed to a mental institution." Doc. No. 2 at 1 [emphasis added]. In arguing for dismissal of the indictment, Johnson attacks both theories. He argues that the evidence does not support the indictment's allegation that he has been adjudicated as a mental defective. According to Johnson, this leaves only the commitment theory as potentially establishing criminal liability. While admitting that he has been previously committed to a mental institution, he argues that the application of Section 922(g)(4) to prohibit his possession of firearms violates his rights under the Second Amendment. In other words, Johnson argues (a) the adjudication theory does not apply to him and (b) the commitment theory cannot apply to him. The indictment must be dismissed if Johnson prevails on both arguments.

*A.     The Adjudication Theory*

Johnson relies on various judicial and mental health records to argue that he has never been adjudicated as a "mental defective" within the meaning of Section 922(g)(4). I agree with the Government that this is a "summary judgment" style argument that is not appropriate for pretrial consideration in a criminal proceeding. Johnson clearly seeks a pretrial ruling, as a matter of law, that the evidence does not support the Grand Jury's allegation that he was previously adjudicated a mental defective. Johnson is not entitled to such a pretrial evaluation of the Government's evidence. *Nelson*, 165 F.3d at 1182; *Ferro*, 252 F.3d at 968. At this stage of the case, the court must accept the Government's allegations as true. *Steffen*, 687 F.3d at 1107 n.2.

The only relevant question, then, is whether the indictment properly states the charged offense. It does. Indeed, the indictment parrots the relevant statutory language, alleging that Johnson, "having been adjudicated a mental defective and having been previously committed to a mental institution," knowingly possessed certain, specified firearms in this district between June and August of 2015. Doc. No. 2 at 1. Accepting these allegations as true, as I must, I find that the indictment states an offense under both of Section 922(g)(4)'s alternative theories.

Johnson may be correct, as a matter of historical fact, that he has never been "adjudicated a mental defective" within the meaning of the adjudication theory. He is free to make that argument as part of a motion for acquittal pursuant to Federal Rule of Criminal Procedure 29 motion – after the Government rests. *Ferro*, 252 F.3d at 968. He is not, however, entitled to have the Government's evidence weighed in advance of trial. I must recommend the denial of Johnson's motion to dismiss the indictment to the extent it relies upon an argument that Johnson has never been adjudicated as a mental defective.

*B.	The Commitment Theory*

Johnson's argument regarding the commitment theory is the mirror image of his adjudication-theory argument. With regard to the commitment theory, Johnson admits (at least for purposes of his motion) that "he was twice 'committed to a mental institution' many years ago." Doc. No. 17-1 at 10. Thus, he is not attempting to test the strength of the Government's evidence as to the indictment's allegation that he was "previously committed to a mental institution." Doc. No. 2 at 1. Instead, he argues that the application of the commitment theory to criminalize his possession of firearms violates his Second Amendment rights in light of *District of Columbia v. Heller,* 554 U.S. 570 (2008). This argument may be advanced in a pretrial motion to dismiss the indictment. *See, e.g.*, *United States v. Louper-Morris*, 672 F.3d 539, 562 (8th Cir. 2012).

*1.	Overview of <u>Heller</u>*

In *Heller*, the Supreme Court struck down a District of Columbia statute that, *inter alia*, effectively prohibited the private possession of handguns. *Id*. at 635-36. In doing so, the Court held that the Second Amendment confers "an individual right to keep and bear arms." *Id*. at 595. The Court also held, however, that this right is not "unlimited." *Id*. The Court provided the following examples of acceptable limits:

> [N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and *the mentally ill*, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

*Id*. at 626-27 [emphasis added]. The Court summarized its holding, and the effect of that holding, as follows:

> In sum, we hold that the District's ban on handgun possession in the home violates the Second Amendment, as does its prohibition against rendering any lawful firearm in the home operable for the purpose of immediate self-

6

defense. *Assuming that Heller is not disqualified from the exercise of Second Amendment rights*, the District must permit him to register his handgun and must issue him a license to carry it in the home.

*Id*. at 635 [emphasis added]. In responding to a dissenting opinion, the Court stated:

> Justice BREYER chides us for leaving so many applications of the right to keep and bear arms in doubt, and for not providing extensive historical justification for those regulations of the right that we describe as permissible. *See* post, at 2869 – 2870. But since this case represents this Court's first in-depth examination of the Second Amendment, one should not expect it to clarify the entire field, any more than *Reynolds v. United States*, 98 U.S. 145, 25 L. Ed. 244 (1879), our first in-depth Free Exercise Clause case, left that area in a state of utter certainty. And there will be time enough to expound upon the historical justifications for the exceptions we have mentioned if and when those exceptions come before us.

*Id*. Thus, the Court acknowledged that many unanswered questions were left open as to the scope and extent of permissible restrictions on the right to keep and bear arms.[1]

### 2. *Post-Heller Challenges to Section 922(g)*

Section 922(g) criminalizes the possession of firearms by several classes of individuals. In addition to the classes described in subsection (g)(4), those classes include felons ((g)(1)), fugitives ((g)(2)), abusers of illegal controlled substances ((g)(3)), illegal aliens ((g)(5)), dishonorably discharged veterans ((g)(6)), individuals who have renounced their citizenship ((g)(7)), individuals subject to a no-contact order ((g)(8)) and domestic abusers ((g)(9)). *See* 18 U.S.C. § 922(g). After *Heller*, many defendants charged with Section 922(g) offenses have challenged the statute's constitutionality. *See, e.g.*, *United States v. Seay*, 620 F.3d 919, 924 (8th Cir. 2010) (citing cases and

---

[1] In a subsequent decision, the Court described the right to keep and bear arms as being "among those fundamental rights necessary to our system of ordered liberty." *McDonald v. City of Chicago*, 561 U.S. 742, 778 (2010).

noting: "To date, none have succeeded."). The Eighth Circuit Court of Appeals has rejected post-*Heller* challenges to three subsections of Section 922(g). *See United States v. Bena*, 664 F.3d 1180, 1184-85 (8th Cir. 2011) (Section 922(g)(8)); *United States v. Joos*, 638 F.3d 581, 586 (8th Cir. 2011) (Section 922(g)(1)); *Seay*, 620 F.3d at 924-25 (Section 922(g)(3)). However, the Eighth Circuit has not yet had occasion to consider the constitutional limits of subsection (g)(4) in the wake of *Heller*.

Nor, for that matter, have many other federal courts. The Fourth Circuit summarily rejected a constitutional challenge to subsection (g)(4) seven months after *Heller* was decided. *United States v. McRobie*, No. 08-4632, 2009 WL 82715, at *1 (4th Cir. Jan.14, 2009) (unpublished per curiam). The First Circuit, in a more-detailed opinion, found that in light of *Heller*, the phrase "having been committed to a mental institution" must be construed narrowly to avoid the unconstitutional infringement of the Second Amendment rights. *United States v. Rehlander*, 666 F.3d 45, 47-49 (1st Cir. 2012). Specifically, the court addressed a statutory procedure under Maine law that permits short-term, involuntary psychiatric hospitalization on a purely ex parte basis. *Id*. at 46. The court noted that traditional, adversarial procedures exist under Maine law for "full-scale commitments." *Id*. at 46-47.

Both defendants in *Rehlander* had been previously subjected to hospitalization pursuant to the short-term, ex parte procedures but had never been committed under Maine's full-scale, adversarial procedures. *Id*. Before *Heller*, the First Circuit had held that involuntary hospitalization under the ex parte procedures fell within the scope of subsection (g)(4). *Id*. (citing *United States v. Volungus*, 595 F.3d 1, 4 (1st Cir. 2010)). Based on that precedent, the defendants were indicted under subsection (g)(4) based on allegations that they possessed firearms despite having been committed to a mental institution. *Id*.

8

Based on *Heller*, however, the First Circuit overruled its own precedent and held that a short-term hospitalization under Maine's ex parte procedures does not constitute being "committed to a mental institution." *Id.* at 49-50. Citing the need to construe statutes to avoid serious constitutional doubts, when possible, the court explained:

> The Supreme Court made clear in *Heller* that its decision did not undercut traditional restrictions on the possession of arms by those who were mentally ill. But nothing suggests that the Court was there addressing a permanent ex parte deprivation of its newly recognized constitutional right. And, given ordinary due process requirements that the Court has adopted in the past, it is highly doubtful that it would deem section 922(g)(4) adequate if it were read to embrace the Maine emergency hospitalization— at least absent further protective procedures or remedies.
>
> This would be a different case if section 922 addressed ex parte hospitalizations and provided for a temporary suspension of the right to bear arms pending further proceedings. It could also be different if section 922 permitted one temporarily hospitalized on an emergency basis to recover, on reasonable terms, a suspended right to possess arms on a showing that he now no longer posed a risk of danger. . . . In all events, right now there is no recovery procedure in Maine that would avoid the ban of section 922.

*Id.* at 48-49 [footnote omitted].

In *Petramala v. United States Dept. of Justice*, No. CV 10–2002–PHX–FJM, 2011 WL 3880826 (D. Ariz. Sept. 2, 2011), the court rejected a post-*Heller* challenge to Section 922(g)(4). In that case, an Arizona state court had previously found the plaintiff to be incompetent on multiple occasions. *Id.* at *1. As such, he was included on the National Instant Criminal Background Check System (NICS) as a person who had "been adjudicated as a mental defective." *Id.* He filed suit, seeking entry of an order removing him from NICS on grounds that Section 922(g)(4) is unconstitutional. *Id.* at *2. The court rejected this argument, first noting that the plaintiff fell squarely within the meaning of the statute. *Id.* The court then referenced *Heller's* acknowledgement

9

that "longstanding prohibitions on the possession of firearms by felons and the mentally ill" remain valid. *Id.* (quoting *Heller*, 554 U.S. at 626). The court concluded that Section 922(g)(4) places "a constitutionally valid limitation on [plaintiff's] possession of firearms." *Id.*

No party has cited, nor have I located, any decision finding Section 922(g)(4) to be unconstitutional in light of *Heller*, either on its face or as applied.[2]

### 3. *Iowa's Relief-From-Disabilities Program*

In *Rehlander*, the First Circuit found it noteworthy that no procedure existed under Maine law for individuals subject to Section 922(g)(4) to seek the restoration of firearms possession rights. 666 F.3d 45 at 48-49. Here, however, Johnson acknowledges that such a procedure is available under Iowa law. Doc. No. 17-1 at 16 (citing Iowa Code § 724.31). In 2008, Congress enacted the NICS Improvement Amendments Act (Act) which, among other things, provided that a state may participate in certain federal grant programs only if it has enacted a relief-from-disabilities program, as defined in the Act. *See* Pub. L. No. 110-180 at §§ 104-105, 122 Stat. 2568-70. Iowa responded by enacting Section 724.31, which took effect January 1, 2011, and states, in relevant part:

> 2. A person who is subject to the disabilities imposed by 18 U.S.C. § 922(d)(4) and (g)(4) because of an order or judgment that occurred under the laws of this state may petition the court that issued the order or judgment or the court in the county where the person resides for relief from the disabilities imposed under 18 U.S.C. § 922(d)(4) and (g)(4). . . .

---

[2] In a lengthy decision, a panel of the Sixth Circuit upheld an as-applied challenge to Section 922(g)(4)'s commitment theory in *Tyler v. Hillsdale County Sheriff's Dept.*, 775 F.3d 308 (6th Cir. 2014). However, on April 21, 2015, the circuit granted a petition for rehearing en banc and vacated the panel opinion. The court has not yet issued its en banc decision.

3. The court shall receive and consider evidence in a closed proceeding, including evidence offered by the petitioner, concerning all of the following:

    a. The circumstances surrounding the original issuance of the order or judgment that resulted in the firearm disabilities imposed by 18 U.S.C. § 922(d)(4) and (g)(4).

    b. The petitioner's record, which shall include, at a minimum, the petitioner's mental health records and criminal history records, if any.

    c. The petitioner's reputation, developed, at a minimum, through character witness statements, testimony, and other character evidence.

    d. Any changes in the petitioner's condition or circumstances since the issuance of the original order or judgment that are relevant to the relief sought.

4. The court shall grant a petition for relief filed pursuant to subsection 2 if the court finds by a preponderance of the evidence that the petitioner will not be likely to act in a manner dangerous to the public safety and that the granting of the relief would not be contrary to the public interest. A record shall be kept of the proceedings, but the record shall remain confidential and shall be disclosed only to a court in the event of an appeal. The petitioner may appeal a denial of the requested relief, and review on appeal shall be de novo. A person may file a petition for relief under subsection 2 not more than once every two years.

Iowa Code § 724.31. Thus, an individual previously committed to a mental institution under Iowa law may have his or her right to possess firearms restored if the court finds (a) that the petitioner will not be likely to act in a manner dangerous to the public safety and (b) that the granting of the relief would not be contrary to the public interest. *Id.*

### 4. The Parties' Arguments

Johnson points out that "the mentally ill," as referenced in *Heller*, is a different class of individual than those who have "been previously committed to a mental institution." Doc. No. 17-1 at 12-13. He contends that his history of two brief mental health commitments, roughly two decades ago, has no bearing on whether he currently poses a danger to himself or others. He further notes that he has a long employment history, no criminal history and no history of violent behavior. *Id*. at 13. Because the Supreme Court has found the right to keep and bear arms to be a fundamental constitutional right, he argues that Section 922(g)(4), as applied to criminalize his possession of firearms, is unconstitutional. *Id*. at 13-17.

The Government relies on *Heller's* recognition that the right to keep and bear arms is not unlimited, noting that the Court took care to point out that it did not intend to cast doubt on existing limitations, including a prohibition on the possession of firearms by the mentally ill. Doc. No. 36 at 5. The Government also argues that Section 922(g)(4) does not place an undue burden on Johnson's Second Amendment rights because a procedure exists for him to seek the restoration of his right to possess firearms. *Id*. at 4-5.

### 5. Analysis

At the outset, I agree with Johnson that the Supreme Court's reference to "the mentally ill" in *Heller* does not conclusively establish the validity of Section 922(g)(4). The statute does not purport to prohibit the possession of firearms by "the mentally ill." Rather, it is directed at individuals who have been "adjudicated a mental defective" or who have "been previously committed to a mental institution." Many individuals who may be deemed to suffer from some form of mental illness – such as depression, anxiety,

eating disorders, etc. – do not fall within the scope of Section 922(g)(4).[3] Conversely, an individual who was committed to a mental institution decades ago may not be mentally ill today. In short, while there may be some overlap between the classes of individuals described in Section 922(g)(4) and the class of individuals who are "mentally ill," those classes do correspond neatly. Thus, I cannot conclude that Section 922(g)(4) is constitutional, as applied to Johnson, simply because the Supreme Court expressed approval of the "longstanding prohibition[] on the possession of firearms by . . . the mentally ill." *Heller,* 554 U.S. at 626-27.

Because *Heller* does not, by itself, answer the question, I must determine the appropriate analytical framework for reaching that answer. At least nine courts of appeal have adopted a two-step approach when assessing statutory restrictions on an individual's right to possess firearms. *See United States v. Marzzarella*, 614 F.3d 85, 89 (3d Cir. 2010); *United States v. Chester*, 628 F.3d 673, 680 (4th Cir. 2010); *National Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, and Explosives*, 700 F.3d 185, 194–95 (5th Cir. 2012); *United States v. Greeno*, 679 F.3d 510, 518 (6th Cir. 2012); *Ezell v. City of Chicago*, 651 F.3d 684, 703–04 (7th Cir. 2011); *United States v. Chovan*, 735 F.3d 1127, 1136 (9th Cir. 2013); *United States v. Reese*, 627 F.3d 792, 800–01 (10th Cir. 2010); *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1260 n. 34 (11th Cir. 2012); *Heller v. District of Columbia*, 670 F.3d 1244, 1252 (D.C. Cir. 2011). It does not appear that the Eighth Circuit has yet adopted or rejected the two-

---

[3] According to the Mayo Clinic:

> Mental illness refers to a wide range of mental health conditions — disorders that affect your mood, thinking and behavior. Examples of mental illness include depression, anxiety disorders, schizophrenia, eating disorders and addictive behaviors.

*See* http://www.mayoclinic.org/diseases-conditions/mental-illness/basics/definition/con-20033813 (viewed January 14, 2016).

13

step approach. In the absence of binding authority to the contrary, I find this approach to be an appropriate method of addressing Johnson's argument.

Under the two-step approach:

> First, we ask whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee…. If it does not, our inquiry is complete. If it does, we evaluate the law under some form of means-ends scrutiny. If the law passes muster under that standard, it is constitutional. If it fails, it is invalid.

*Marzzarella*, 614 F.3d at 89.

### *1. Step One – Scope*

As noted above, the statute's commitment theory criminalizes the possession of firearms by any person who has "been previously committed to a mental institution." 18 U.S.C. § 922(g)(4). Step one requires consideration of "whether the challenged law burdens conduct that falls within the scope of the Second Amendment right, as historically understood." *Greeno*, 679 F.3d at 518 (citing *Chester*, 628 F.3d at 680); *see also Ezell*, 651 F.3d at 702 (interpreting *Heller* as holding that some laws "will survive Second Amendment challenge because they regulate activity falling outside the terms of the right as publicly understood when the Bill of Rights was ratified"). In the Sixth Circuit's now-vacated opinion in *Tyler*, the panel undertook a historical analysis of whether the right to possess a gun was understood, in 1791, to be inapplicable to any person who had ever been committed to a mental institution. *Tyler*, 775 F.3d at 319-22. While the opinion itself clearly has no precedential value, I find the panel's discussion on this issue to be instructive.

The panel found no historical evidence suggesting an answer to the question of whether a prior mental health commitment was deemed to have disqualified a citizen from possessing firearms. *Id.* at 321. While acknowledging *Heller's* approval of the

prohibition of firearms by "the mentally ill," the panel observed that "the class of individuals constituting those ever previously mentally institutionalized is not identical to the class of individuals presently mentally ill." *Id*. at 322. Thus, the panel concluded that the Government had not met its burden of showing that Section 922(g)(4) regulates only conduct that falls outside the scope of the Second Amendment. *Id*.

Here, neither party has presented historical evidence in an attempt to establish that as of 1791, an individual who had previously been committed to a mental institution either could or could not lawfully possess firearms. Further, as I explained above, I agree with Johnson (and with the *Tyler* panel) that the class of individuals who are "mentally ill" does not correspond precisely to the class of individuals who have ever been "committed to a mental institution." Thus, I cannot conclude that a prohibition on the possession of firearms by any individual who has ever been committed to a mental institution exclusively criminalizes conduct that is beyond the protection of the Second Amendment.

### 2. *Step Two – Scrutiny*

The second step requires the application of some level of scrutiny to determine whether the statute's regulation of a constitutionally-protected activity is permissible. *See, e.g.*, *Marzzarella*, 614 F.3d at 89. *Heller* made it clear that rational-basis review is not appropriate. *Heller*, 554 U.S. at 628 n.27 ("If all that was required to overcome the right to keep and bear arms was a rational basis, the Second Amendment would be redundant with the separate constitutional prohibitions on irrational laws, and would have no effect."). Thus, the choice is between strict scrutiny and intermediate scrutiny.

The Supreme Court has yet to resolve this question. Nor has the Eighth Circuit. Other courts of appeals have adopted a variety of approaches. Some have concluded that regulations burdening the fundamental right of self-defense in the home are subject

to strict scrutiny while regulations limiting the ability to carry firearms in public are subject only to intermediate scrutiny. *See, e.g.*, *National Rifle Ass'n*, 700 F.3d at 195; 185, 194–95 (5th Cir. 2012); *United States v. Masciandaro*, 638 F.3d 458, 470 (4th Cir. 2011). While I find this approach to be persuasive, I also conclude that it is not necessary to analyze this issue in detail. As I will explain below, I conclude that Johnson's as-applied challenge to Section 922(g)(4) must fail even under strict-scrutiny review.

Strict scrutiny requires examination of whether the challenged statute is "narrowly tailored to serve compelling state interests." *Survivors Network of Those Abused by Priests, Inc. v. Joyce*, 779 F.3d 785, 793 (8th Cir. 2015) (First Amendment analysis) (quoting *R.A.V. v. City of St. Paul*, 505 U.S. 377, 395 (1992)). There seems to be no dispute that Section 922(g), in restricting the possession of firearms by certain classes of individuals, serves a compelling interest in reducing gun violence. Johnson acknowledges that "[g]un violence in this country is a significant problem." Doc. No. 17-1 at 17. In *Heller*, the Supreme Court likewise acknowledged "the problem of handgun violence in this country" and, as noted above, endorsed as "presumptively lawful" various "longstanding" prohibitions. *Heller*, 554 U.S. at 626 n.26.

The more-difficult question, for purposes of Johnson's as-applied challenge, is whether Section 922(g)(4) is narrowly tailored to serve that compelling interest. Standing on its own, the answer is almost-certainly "no." The Government has not challenged Johnson's assertions that: (1) his two commitments to mental institutions occurred approximately 20 years ago (in 1995 and 1997) and were both very brief; (2) he has no criminal history, (3) he has no history of violent behavior and (4) he has a "long, respectable work history." Doc. No. 17-1 at 13. Nor has the Government presented evidence suggesting that Johnson currently poses a danger to himself or others.

Under these circumstances, a statute that operates to deprive Johnson of a fundamental constitutional right for the rest of his life, based solely on brief mental health commitments two decades ago, does not appear to be "narrowly tailored to serve compelling state interests." If there was no more to the story, Johnson may well have a compelling argument that Section 922(g)(4) cannot constitutionally criminalize his possession of firearms.

However, there is more. Because Johnson is making an as-applied challenge, I must also consider the fact that he has had the opportunity, since 2011, to seek restoration of his right to possess firearms.[4] *See* Iowa Code § 724.31. As noted above, the NICS Improvement Amendments Act not only authorized, but actually incentivized, the states to adopt relief-from-disabilities programs for the benefit of individuals subject to Section 922(g)(4). *See* Pub. L. No. 110-180 at §§ 104-105, 122 Stat. 2568-70. While not expressly amending Section 922(g)(4), the Act effectively modified that statute by authorizing procedures under which an otherwise-lifetime ban on the possession of firearm may be lifted.

Both of Johnson's commitments to mental institutions occurred in Iowa, under Iowa law. *See* Doc. No. 17-1 at 5-8. Thus, from the moment Section 724.31 took effect on January 1, 2011, Johnson has had the right to seek the restoration of his right to keep and bear arms by showing (a) that he will not be likely to act in a manner dangerous to the public safety and (b) that granting relief will not be contrary to the public interest. Iowa Code § 724.31(4). Johnson does not allege that he took any action to seek the restoration of his right to possess firearms. Meanwhile, the indictment alleges

---

[4] An as-applied challenge requires the court to evaluate the application of the statute at issue "to the particular person in their particular circumstance to determine constitutionality." *Kittle-Aikeley v. Claycomb*, 807 F.3d 913, 927 (8th Cir. 2015) (Bye, J., dissenting) (citing *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008); *United States v. Stephens*, 594 F.3d 1033, 1039–40 (8th Cir. 2010)).

17

that Johnson possessed firearms from June 2015 through August 2015 – more than four years after he first could have filed a petition under Section 724.31.   Doc. No. 2 at 1.

Johnson does not allege that Iowa's relief-from-disabilities procedures are illusory or unduly burdensome.   Indeed, his only complaint about the Iowa process seems to be that it exists.   He argues that the constitutional viability of Section 922(g)(4) should not depend on whether the defendant's state has accepted Congress's invitation to establish a relief from disabilities program.   *Id*. at 16-17.   However, Johnson's motion challenges Section 922(g)(4) as applied to him – not to a hypothetical defendant in a state that has not adopted a relief-from-disabilities program.   Here, Johnson had more than four years before the acts alleged in the indictment to file a petition, establish that he is not dangerous and obtain the restoration of his right to keep and bear arms.

For this reason, I reject Johnson's argument that Section 922(g)(4) is unconstitutional as applied to him.   While the statute may go too far in its implicit assumption that every individual who has ever been committed to a mental institution poses too much of a danger to possess firearms, Congress has authorized – and Iowa has adopted – procedures for relief.   Because Johnson has had the opportunity to show that he does not pose a danger, and thus should have his rights restored, Section 922(g)(4) is narrowly tailored when applied to him.   As such, I recommend that Johnson's motion to dismiss the indictment be denied as to Section 922(g)(4)'s commitment theory.

### IV.   CONCLUSION AND RECOMMENDATION

For the reasons set forth herein, I RESPECTFULLY RECOMMEND that the motion (Doc. No. 17) by defendant Arlyn Dale Johnson to dismiss the indictment be **denied**.

Objections to this Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Crim. P. 59(b) must be filed within fourteen (14) days of the

service of a copy of this Report and Recommendation. Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Crim. P. 59. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED.**

**DATED** this 19th day of January, 2016.

_____
LEONARD T. STRAND
UNITED STATES MAGISTRATE JUDGE