# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> ARLYN DALE JOHNSON, <br><br> Defendant. | No. CR15-3035-MWB <br><br> **MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT'S MOTION TO DISMISS** |

_____

## TABLE OF CONTENTS

*I.   INTRODUCTION AND BACKGROUND ............................................................. 3*
   *A.   Procedural Background ........................................................................ 3*
   *B.   Factual Background .............................................................................. 5*
*II.  LEGAL ANALYSIS ............................................................................................ 6*
   *A.   Standard Of Review .............................................................................. 6*
   *B.   Johnson's Objections .......................................................................... 10*
      *1.   Need for a trial on the merits .................................................... 10*
      *2.   Constitutional validity of § 922(g)(4) as applied ........................... 11*
         *a.   What is the appropriate test? ................................................ 13*
         *b.   Application of the two-step test ............................................ 14*
*III. CONCLUSION ................................................................................................ 18*

This case brings to mind Judge J. Harvie Wilkinson's cogent observation concerning the "serious business" of adjudicating the Second Amendment's breadth: "We do not wish to be even minutely responsible for some unspeakably tragic act of mayhem because in the peace of our judicial chambers we miscalculated as to Second Amendment rights." *United States v. Masciandaro*, 638 F.3d 458, 475 (4th Cir. 2011) (Wilkinson, J., writing for the court in part). The issue before me concerns whether the Second Amendment's breadth is so broad as to render unconstitutional a federal criminal statute's longstanding prohibition on the possession of firearms by the mentally ill.[1]

---

[1] The statute in question is 18 U.S.C. § 922(g)(4), which states:

> (g) It shall be unlawful for any person--
>
> . . . .
>
> (4) who has been adjudicated as a mental defective or who has been committed to a mental institution;
>
> . . . .
>
> to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(4). Thus, § 922(g)(4) prohibits firearm possession by two separate groups: (1) those adjudicated "as mentally defective" and (2) those "who has been committed to a mental institution." *Id.; see United States v. Chamberlain,* 159 F.3d 656, 664 (1st Cir. 1998) (Noting that Congress banned firearm possession by those "adjudicated as mentally defective" separately from its ban on those "committed to a mental institution," Congress evidently intended to "cast a wider net."); *United States v. Vertz*, 102 F. Supp. 2d 787, 790 (W.D. Mich. 2000) ((noting that "[t]he trend of recent cases is to focus on the fact that adjudication as mentally ill and commitment to a mental hospital are two separate and distinct prongs of the federal firearms statute.").

2

## I. INTRODUCTION AND BACKGROUND

### A. *Procedural Background*

This case is before me on former United States Magistrate Judge Leonard T. Strand's Report And Recommendation on defendant Arlyn Dale Johnson's Motion to Dismiss (docket no. 37).[2] In his Report and Recommendation, Judge Strand recommends denying Johnson's motion. I, therefore, undertake the necessary review of Judge Strand's Report and Recommendation.

On August 20, 2015, an Indictment was returned charging Johnson with possession of a firearm by a prohibited person, in violation of 18 U.S.C. § 922(g)(4). Specifically, the Indictment alleges that:

> From about June 2015 through August 2015, in the Northern District of Iowa, defendant Arlyn Dale Johnson, having been adjudicated a mental defective and having been previously committed to a mental institution did knowingly possess, in and affecting interstate commerce, firearms, namely: a Remington Model 700 rifle, serial number S6250083; a Ruger SP101 revolver, .357 caliber, serial number 575-52093; and a Ruger 10/22 rifle .22 caliber, serial number 239-54986.
>
> This was in violation of Title 18, United States Code, Sections 922(g)(4) and 924(a)(2).

Indictment at 1. Thus, Johnson is charged with belonging to both prohibited groups identified in § 922(g)(4).[3]

---

[2] On February 11, 2016, Judge Strand was confirmed as a United States District Court Judge for the Northern District of Iowa.

[3] Other classes of people denied gun-possession rights are: convicted felons, § 922(g)(1); fugitives, § 922(g)(2); unlawful users of controlled substances, § 922(g)(3); drug addicts, § 922(g)(3); illegal aliens, § 922(g)(5)(A); non-immigrant aliens, § 922(g)(5)(B); those dishonorably discharged from the Armed Forces, § 922(g)(6); renouncers of U.S. citizenship, § 922(g)(7); persons subject to certain domestic-restraining orders, § 922(g)(8); and domestic-violence misdemeanants, § 922(g)(9).

Johnson subsequently filed a sealed Motion To Dismiss (docket no. 17). In his motion, Johnson contends that the evidence does not support the Indictment's allegation that he has been adjudicated as a mental defective. Johnson also contends that, although he has been previously committed to a mental institution, applying § 922(g)(4) to him violates his Second Amendment right to keep and bear arms in light of the United States Supreme Court's decision in *United States v. Heller*, 554 U.S. 570 (2008). The prosecution filed a timely resistance to Johnson's motion. Johnson's Motion to Dismiss was referred to former United States Magistrate Judge Leonard T. Strand, pursuant to 28 U.S.C. § 636(b).

On January 19, 2016, Judge Strand filed a Report and Recommendation in which he recommends that Johnson's Motion to Dismiss be denied. In his Report and Recommendation, Judge Strand first considered Johnson's challenge that he has never been adjudicated as a mental defective within the meaning of § 922(g)(4). Judge Strand concluded that Johnson's "summary judgment" style argument was inappropriate in a criminal case because, at the pretrial stage, he was required to accept the prosecution's allegations as true. Accepting the prosecution's allegations as true, Judge Strand found that the Indictment properly states an offense under both of § 922(g)(4)'s alternative theories. Thus, Judge Strand recommended that this portion of Johnson's motion be denied.

Judge Strand next turned to Johnson's constitutional challenge to § 922(g)(4)'s prohibition on the possession of firearms by individuals who have been committed to a mental institution. Judge Strand applied a two-step test in assessing the constitutionality of § 922(g)(4)'s restriction on Johnson's right to possess firearms. Under this two-step test:

> "First, we ask whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee.... If it does not, our inquiry is complete. If it does, we evaluate the law under some form of means-ends scrutiny.

4

> If the law passes muster under that standard, it is constitutional.
> If it fails, it is invalid."

Report and Recommendation at 14 (quoting *United States v. Marzzarella*, 614 F.3d 85, 89 (3rd Cir. 2010)). Applying this two-step test, Judge Strand first concluded that § 922(g)(4) imposed a burden on conduct falling within the scope of the Second Amendment's guarantee of an individual's right to possess firearms. On the second-step, however, Judge Strand found that § 922(g)(4) served a compelling interest in reducing gun violence and "[b]ecause Johnson has had the opportunity to show that he does not pose a danger, and thus should have his rights restored, Section 922(g)(4) is narrowly tailored when applied to him." Report and Recommendation at 18. Thus, Judge Strand recommended that this portion of Johnson's motion also be denied.

Johnson has filed objections to Judge Strand's Report and Recommendation. The prosecution has not filed a response to Johnson's objections. I, therefore, undertake the necessary review of Judge Strand's recommended disposition of Johnson's Motion to Dismiss.

### B. *Factual Background*

In his Report and Recommendation, Judge Strand found, for the purpose of determining Johnson's motion only, that: (1) Johnson's two commitments to mental institutions occurred approximately in 1995 and 1997, and were both very brief; (2) Johnson has no criminal history, (3) Johnson has no history of violent behavior and (4) Johnson has a "long, respectable work history." Report and Recommendation at 16. Judge Strand also found that the prosecution presented no "evidence suggesting that Johnson currently poses a danger to himself or others." *Id*.

## II. LEGAL ANALYSIS
### A. Standard Of Review

I review the magistrate judge's report and recommendation pursuant to the statutory standards found in 28 U.S.C. § 636(b)(1):

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); see FED. R. CIV. P. 72(b) (stating identical requirements); N.D. IA. L.R. 72, 72.1 (allowing the referral of dispositive matters to a magistrate judge but not articulating any standards to review the magistrate judge's report and recommendation). While examining these statutory standards, the United States Supreme Court explained:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue de novo if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a de novo or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 154 (1985). Thus, a district court may review de novo any issue in a magistrate judge's report and recommendation at any time. *Id.* If a party files an objection to the magistrate judge's report and recommendation, however, the district court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). In the absence of an objection, the district court is not required "to give any more consideration to the magistrate's report than the court considers appropriate." *Thomas*, 474 U.S. at 150.

*De novo* review, of course, is nondeferential and generally allows a reviewing court to make an "independent review" of the entire matter. *Salve Regina College v. Russell*,

499 U.S. 225, 238 (1991) (noting also that "[w]hen de novo review is compelled, no form of appellate deference is acceptable"); *see Doe v. Chao*, 540 U.S. 614, 620-19 (2004) (noting *de novo* review is "distinct from any form of deferential review"). The *de novo* review of a magistrate judge's report and recommendation, however, only means a district court "'give[s] fresh consideration to those issues to which specific objection has been made.'" *United States v. Raddatz*, 447 U.S. 667, 675 (1980) (quoting H.R. Rep. No. 94-1609, at 3, *reprinted in* 1976 U.S.C.C.A.N. 6162, 6163 (discussing how certain amendments affect 28 U.S.C. § 636(b))). Thus, while *de novo* review generally entails review of an entire matter, in the context of § 636 a district court's required *de novo* review is limited to "de novo determination[s]" of only "those portions" or "specified proposed findings" to which objections have been made. 28 U.S.C. § 636(b)(1); *see Thomas*, 474 U.S. at 154 ("Any party that desires plenary consideration by the Article III judge of any *issue* need only ask." (emphasis added)). Consequently, the Eighth Circuit Court of Appeals has indicated *de novo* review would only be required if objections were "specific enough to trigger *de novo* review." *Branch v. Martin*, 886 F.2d 1043, 1046 (8th Cir. 1989). Despite this "specificity" requirement to trigger *de novo* review, the Eighth Circuit Court of Appeals has "emphasized the necessity . . . of retention by the district court of substantial control over the ultimate disposition of matters referred to a magistrate." *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994). As a result, the Eighth Circuit Court of Appeals has been willing to "liberally construe[]" otherwise general *pro se* objections to require a *de novo* review of all "alleged errors," *see Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995), and to conclude that general objections require "full de novo review" if the record is concise, *Belk*, 15 F.3d at 815 ("Therefore, even had petitioner's objections lacked specificity, a de novo review would still have been appropriate given such a concise record."). Even if the reviewing court must construe objections liberally to require de novo review, it is clear to me that there is a distinction between making an objection and making no objection at all. *See Coop. Fin. Assoc., Inc. v. Garst*, 917 F. Supp. 1356, 1373 (N.D.

7

Iowa 1996) ("The court finds that the distinction between a flawed effort to bring objections to the district court's attention and no effort to make such objections is appropriate."). Therefore, I will strive to provide *de novo* review of all issues that might be addressed by any objection, whether general or specific, but will not feel compelled to give *de novo* review to matters to which no objection at all has been made.

In the absence of any objection, the Eighth Circuit Court of Appeals has indicated a district court should review a magistrate judge's report and recommendation under a clearly erroneous standard of review. *See Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting when no objections are filed and the time for filing objections has expired, "[the district court judge] would only have to review the findings of the magistrate judge for clear error"); *Taylor v. Farrier*, 910 F.2d 518, 520 (8th Cir. 1990) (noting the advisory committee's note to Fed. R. Civ. P. 72(b) indicates "when no timely objection is filed the court need only satisfy itself that there is no clear error on the face of the record"); *Branch*, 886 F.2d at 1046 (contrasting *de novo* review with "clearly erroneous standard" of review, and recognizing *de novo* review was required because objections were filed). I am unaware of any case that has described the clearly erroneous standard of review in the context of a district court's review of a magistrate judge's report and recommendation to which no objection has been filed. In other contexts, however, the Supreme Court has stated the "foremost" principle under this standard of review "is that '[a] finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). Thus, the clearly erroneous standard of review is deferential, *see Dixon v. Crete Medical Clinic, P.C.*, 498 F.3D 837, 847 (8th Cir. 2007) (noting a finding is not clearly erroneous even if another view is supported by the evidence), but a district court may still reject the magistrate judge's report and

8

recommendation when the district court is "left with a definite and firm conviction that a mistake has been committed," *U.S. Gypsum Co*., 333 U.S. at 395.

Even though some "lesser review" than *de novo* is not "positively require[d]" by statute, *Thomas*, 474 U.S. at 150, Eighth Circuit precedent leads me to believe that a clearly erroneous standard of review should generally be used as the baseline standard to review all findings in a magistrate judge's report and recommendation that are not objected to or when the parties fail to file any timely objections, *see Grinder*, 73 F. 3d at 795; *Taylor*, 910 F.2d at 520; *Branch*, 886 F. 2d at 1046; *see also* FED. R. CIV. P. 72(b) advisory committee's note ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."). In the context of the review of a magistrate judge's report and recommendation, I believe one further caveat is necessary: a district court always remains free to render its own decision under *de novo* review, regardless of whether it feels a mistake has been committed. *See Thomas*, 474 U.S. at 153-54. Thus, while a clearly erroneous standard of review is deferential and the minimum standard appropriate in this context, it is not mandatory, and I may choose to apply a less deferential standard.[4]

---

[4]The Eighth Circuit Court of Appeals, in the context of a dispositive matter originally referred to a magistrate judge, does not review a district court's decision in similar fashion. The Eighth Circuit Court of Appeals will either apply a clearly erroneous or plain error standard to review factual findings, depending on whether the appellant originally objected to the magistrate judge's report and recommendation. *See United States v. Brooks*, 285 F.3d 1102, 1105 (8th Cir. 2002) ("Ordinarily, we review a district court's factual findings for clear error . . . . Here, however, the record reflects that [the appellant] did not object to the magistrate's report and recommendation, and therefore we review the court's factual determinations for plain error." (citations omitted)); *United States v. Looking*, 156 F.3d 803, 809 (8th Cir. 1998) ("[W]here the defendant fails to file timely objections to the magistrate judge's report and recommendation, the factual conclusions underlying that defendant's appeal are reviewed for plain error."). The plain error standard of review is different than a clearly erroneous standard of review, *see United States v.*

As noted above, Johnson has filed objections to Judge Strand's Report and Recommendation. I, therefore, undertake the necessary review of Judge Strand's recommended disposition of Johnson's Motion to Dismiss.

### B. *Johnson's Objections*
#### 1. *Need for a trial on the merits*

Johnson initially objects to Judge Strand's conclusion that the question of whether Johnson has ever been adjudicated as a "mental defective" must await a trial on the merits. Johnson points to the prosecution's requested competency evaluation of him as evidence that he does not meet the definition of a person who has been adjudicated as a mental defective. The flaw in Johnson's summary judgment styled argument, as Judge Strand pointed out in his Report and Recommendation, is that there is no corollary to summary judgment in criminal cases. *See United States v. Ferro*, 252 F.3d 964, 968 (8th Cir. 2001);

---

*Barth*, 424 F.3d 752, 764 (8th Cir. 2005) (explaining the four elements of plain error review), and ultimately the plain error standard appears to be discretionary, as the failure to file objections technically waives the appellant's right to appeal factual findings, *see Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (stating an appellant who did not object to the magistrate judge's report and recommendation waives his or her right to appeal factual findings, but then choosing to "review[] the magistrate judge's findings of fact for plain error"). An appellant does not waive his or her right to appeal questions of law or mixed questions of law and fact by failing to object to the magistrate judge's report and recommendation. *United States v. Benshop*, 138 F.3d 1229, 1234 (8th Cir. 1998) ("The rule in this circuit is that a failure to object to a magistrate judge's report and recommendation will not result in a waiver of the right to appeal ""when the questions involved are questions of law or mixed questions of law and fact.""" (quoting *Francis v. Bowen*, 804 F.2d 103, 104 (8th Cir. 1986), in turn quoting *Nash v. Black*, 781 F.2d 665, 667 (8th Cir. 1986))). In addition, legal conclusions will be reviewed *de novo*, regardless of whether an appellant objected to a magistrate judge's report and recommendation. *See, e.g., United States v. Maxwell*, 498 F.3d 799, 801 n.2 (8th Cir. 2007) ("In cases like this one, 'where the defendant fails to file timely objections to the magistrate judge's report and recommendation, the factual conclusions underlying that defendant's appeal are reviewed for plain error.' We review the district court's legal conclusions de novo." (citation omitted)).

*United States v. Nabors*, 45 F.3d 238, 240 (8th Cir. 1995); *see also United States v. DeLaurentis*, 230 F.3d 659, 661 (3d Cir. 2000); *United States v. Critzer*, 951 F.2d 306, 307 (11th Cir. 1992). As the Eighth Circuit Court of Appeals observed in *Ferro*:

> "In civil cases, of course, the summary judgment procedures contemplated by Federal Rule of Civil Procedure 56 may be utilized to test, pretrial, the sufficiency of the evidence to establish triable issues of fact; but there is no corollary in criminal cases. The government is entitled to marshal and present its evidence at trial, and have its sufficiency tested by a motion for acquittal pursuant to Federal Rule of Criminal Procedure 29. . . . [W]e simply cannot approve dismissal of an indictment on the basis of predictions as to what the trial evidence will be."

*Ferro*, 252 F.3d at 968 (quoting *DeLaurentis*, 230 F.3d at 661); *see Nabors*, 45 F.3d at 240 ("There being no equivalent in criminal procedure to the motion for summary judgment that may be made in a civil case, *see* FED. R. CIV. P. 56(c), the government has no duty to reveal all of its proof before trial."); *Critzer*, 951 F.2d at 307 (noting that "[t]here is no summary judgment procedure in criminal cases. Nor do the rules provide for a pre-trial determination of sufficiency of the evidence."). Johnson's reliance on Chief Judge Reade's decision in *United States v. B.H.*, 466 F. Supp. 2d 1139, 1145-47 (N.D. Iowa 2006), is misplaced since that was a civil case. There is no dispute that Johnson was properly indicted for allegedly violating § 922(g)(4). Because the Indictment is proper, the prosecution is entitled to present its evidence at trial. Johnson may test the sufficiency of the prosecution's evidence at trial via a motion for acquittal pursuant to Federal Rule of Criminal Procedure 29. Accordingly, Johnson's objection is overruled.

### 2. *Constitutional validity of § 922(g)(4) as applied*

Johnson also objects to Judge Strand's conclusion that § 922(g)(4) does not violate the Second Amendment as applied to him. The Second Amendment to the Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." In *District of Columbia*

11

*v. Heller*, 554 U.S. 570 (2008) the United States Supreme Court held that the Second Amendment confers "an individual right to keep and bear arms." *Id.* at 595. In *McDonald v. City of Chicago*, 130 S. Ct. 3020 (2010), the Supreme Court held that the right to keep and bear arms is a "fundamental" constitutional right "deeply rooted in this Nation's history and tradition." *Id*. at 3042. Federal courts of appeals have adopted a two-step test in resolving Second Amendment challenges to a law's constitutionality. *See Kolbe v. Hogan*, --- F.3d ---, 2016 WL 425829, at *3 (4th Cir. Feb. 4, 2016); *United States v. Heller*, 801 F.3d 264, 281 (D.C. Cir. 2015); *United States v. Greeno*, 679 F.3d 510, 518 (6th Cir. 2012); *Ezell v. City of Chicago*, 651 F.3d 684, 701–04 (7th Cir. 2011); *United States v. Chester*, 628 F.3d 673, 680 (4th Cir. 2010); *United States v. Reese*, 627 F.3d 792, 800–01 (10th Cir. 2010); *Marzzarella*, 614 F.3d at 89. The first step asks "whether the challenged law burdens conduct that falls within the scope of the Second Amendment right, as historically understood." *Greeno*, 679 F.3d at 518. If the prosecution "demonstrates that the challenged statute regulates activity falling outside the scope of the Second Amendment right as it was understood [in 1791, at the Bill of Rights' ratification, or in 1868, at the Fourteenth Amendment's ratification], then the analysis can stop there." *Id.* (internal quotation marks omitted). Under those circumstances, "the regulated activity is categorically unprotected, and the law is not subject to further Second Amendment review." *Id.* However, "[i]f the [prosecution] cannot establish this—if the historical evidence is inconclusive or suggests that the regulated activity is not categorically unprotected—then there must be a second inquiry into the strength of the [prosecution's] justification for restricting or regulating the exercise of Second Amendment rights." *Id.* The second step involves "appl[ying] the appropriate level of scrutiny. If the law satisfies

the applicable standard, it is constitutional. If it does not, it is invalid." *Id.* (internal citations and quotation marks omitted).[5]

### a. *What is the appropriate test?*

Johnson argues that Judge Strand should not have applied the two-step test discussed above in resolving his Second Amendment challenge to § 922(g)(4). He points out that the Eighth Circuit Court of Appeals has not adopted the two-step test and contends that the second part of the test runs counter to *Heller* and *McDonald*. I concede that there is language in *Heller* indicating that courts should not conduct an interest balancing test. *See Heller*, 554 U.S. at 634–35 ("We know of no other enumerated constitutional right whose core protection has been subjected to a freestanding 'interest-balancing' approach. The very enumeration of the right takes out of the hands of government—even the Third Branch of Government—the power to decide on a case-by-case basis whether the right is really worth insisting upon."); *McDonald*. 561 U.S. at 790–91 (noting that the *Heller* Court "specifically rejected" "an interest-balancing test"); *see also Heller v. District of Columbia*, 670 F.3d 1244, 1282 (D.C. Cir. 2011) (Kavanaugh, J., dissenting) ("*Heller* and *McDonald* didn't just reject interest balancing. The Court went much further by expressly rejecting [the dissent's] intermediate scrutiny approach, disclaiming cost-benefit analysis, and denying the need for empirical inquiry."). Nevertheless, this language has not deterred federal courts of appeals from, to date, universally adopting the two-step test post-*Heller*. *See Hogan*, --- F.3d ---, 2016 WL 425829, at *3; *Heller*, 801 F.3d at 281; *Greeno*, 679 F.3d at 518; *Ezell*, 651 F.3d at 701–04; *Chester*, 628 F.3d at 680; *Reese*, 627 F.3d at 800–01; *Marzzarella*, 614 F.3d at 89. Although these federal court decisions are not binding

---

[5]The Ninth Circuit Court of Appeals applies a slightly different two-step test, which asks "first, whether" the relevant conduct "amount[s] to 'keeping and bearing Arms' within the meaning of the Second Amendment and, next, whether the challenged laws, if they indeed d[o] burden constitutionally protected conduct, 'infring[e]' the right." *Peruta v. County of San Diego*, 742 F.3d 1144, 1150 (9th Cir. 2014) (internal quotation and alteration marks omitted).

precedent because they are from outside this circuit, they are, nonetheless, considered persuasive or highly persuasive authority. *See Flamingo S. Beach I Condo. Ass'n, Inc. v. Selective Ins. Co. of Southeast*, 492 Fed. App'x 16, 19 (11th Cir. 2012) (persuasive); *Generali v. D'Amico*, 766 F.2d 485, 489 (11th Cir. 1985) (persuasive); *United States v. Diamond*, 430 F.2d 688, 692 (5th Cir. 1970) (persuasive); *see also Maple v. Citizens Nat'l Bank & Trust Co.*, 437 F. Supp. 66, 68-69 (W.D. Okla. 1977) ("[T]he decision of a court of appeals for another circuit is entitled to great weight and will be highly persuasive."); *Basic Boats, Inc., for Use & Benefit of Lumbermens Mut. Cas. Co. v. United States*, 311 F. Supp. 596, 597 (E.D. Va. 1970) ("Recognizing that the decisions of the United States Court of Appeals for the First Circuit are not absolutely binding upon a district court in another circuit, such decisions are nevertheless highly persuasive."). Here, Johnson has not directed me to any federal case applying an alternative to the two-step test discussed above. I decline to adopt Johnson's proposal to dispense with the second step in the two-step test analysis. Such an approach would totally eliminate judicial review of the legislative justification for any law which restricts the exercise of Second Amendment rights. In the complete absence of any meaningful alternative test, I find the out of circuit precedent adopting the two-step test to be persuasive. Accordingly, Johnson's objection is overruled.

### b. *Application of the two-step test*

Neither party has objected to Judge Strand's determination that § 922(g)(4) burdens conduct falling within the scope of the Second Amendment, and I agree with Judge Strand's conclusion. Johnson also agrees with Judge Strand's conclusion that "a statute that operates to deprive [him] of a fundamental constitutional right for the rest of his life, based solely on brief mental health commitments two decades ago, does not appear to be 'narrowly tailored to serve compelling state interests.'" Report and Recommendation 17. Johnson, however, objects to Judge Strand's further determination, that § 922(g)(4) is constitutional as applied to him because Iowa's relief-from-disabilities statute, Iowa Code

14

§ 724.31, effectively modified § 922(g)(4) by authorizing a procedure under which Johnson's otherwise-lifetime ban on the possession of a firearm could be lifted.

The Supreme Court made clear in its *Heller* decision that the Second Amendment right to keep and bear arms was "not unlimited, just as the First Amendment's right of free speech was not." *Heller*, 554 U.S. at 595. Illustrating this point, the Court noted that it was not undercutting traditional restrictions on the possession of arms by those who were mentally ill. Specifically, the Court observed that "nothing in [*Heller*] should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill." *Heller*, 554 U.S. at 626–27, *accord McDonald*, 130 S. Ct. at 3047.

The *Heller* Court expressly declined to prescribe the appropriate level of judicial scrutiny for firearms regulations, but did reject any kind of "rational basis" or reasonableness test. *Heller*, 554 U.S. at 628 n. 27. Since *Heller*, federal courts have debated the appropriate level of judicial scrutiny.[6] *Compare Kolbe*, ---F.3d---, 2016 WL 425829, at *13 (holding that "[s]trict scrutiny, then, is the appropriate level of scrutiny to apply to the ban of semiautomatic rifles and magazines holding more than 10 rounds."); *Woollard v. Gallagher*, 712 F.3d 865, 878 (4th Cir. 2013) (observing that restrictions on "the right to arm oneself at home" require application of strict scrutiny), *with United States v. Chovan*, 735 F.3d 1127, 1136 (9th Cir. 2013) (holding that intermediate scrutiny applies to a Second Amendment challenge to a law burdening "conduct falling within the scope of the Second Amendment's guarantee."); *Heller*, 670 F.3d at 1257 (applying intermediate scrutiny to gun-registration laws, but holding that "a regulation that imposes a substantial

---

[6]In *Friedman v. City of Highland Park*, 784 F.3d 406 (7th Cir. 2015), the Seventh Circuit Court of Appeals, in upholding a ban on "assault weapons" and large capacity magazines, dispensed with levels of scrutiny entirely and, instead, applied its own test which asks: "whether a regulation bans weapons that were common at the time of ratification or those that have some reasonable relationship to the preservation or efficiency of a well regulated militia, and whether law-abiding citizens retain adequate means of self-defense." *Id.* at 410 (internal quotation marks and citations omitted).

15

burden upon the core right of self-defense protected by the Second Amendment must have a strong justification, whereas a regulation that imposes a less substantial burden should be proportionately easier to justify."); *United States v. Booker*, 644 F.3d 12, 25 (1st Cir. 2011) (applying intermediate scrutiny, to a challenge to § 922(g)'s "categorical ban on gun ownership" by individuals convicted of a "misdemeanor crime of domestic violence," which required a "strong showing, necessitating a substantial relationship between the restriction and an important governmental object.") (internal quotation marks omitted)); *United States v. Reese*, 627 F.3d 792, 802 (10th Cir. 2010) (applying intermediate scrutiny to an as applied challenge to § 922(g)(8)'s prohibition on the possession of firearms while subject to a domestic protection order).

I need not wade "into the 'levels of scrutiny' quagmire," *United States v. Skoien*, 614 F.3d 638, 642 (7th Cir. 2010), because I conclude that § 922(g)(4), as applied here, passes constitutional muster even under strict scrutiny. A challenged law satisfies strict scrutiny if it "'furthers a compelling interest and is narrowly tailored to achieve that interest.'" *Citizens United v. Federal Election Comm'n*, 558 U.S. 310, 340 (2010) (quoting *Federal Election Comm'n v. Wisconsin Right to Life, Inc.*, 551 U.S. 449, 464 (2007): *see Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2231 (2015); *Arizona Free Enterprise Club's Freedom Club PAC v. Bennett,* 131 S. Ct. 2806, 2817 (2011). I have no trouble concluding that § 922(g)(4)'s prohibition on the possession of firearms by individuals "adjudicated as a mental defective" or who have "been committed to a mental institution," furthers the compelling interests of protecting society from violent crime[7] and preventing suicides. *See*

---

[7]Mass shootings such as the 2007 Virginia Tech rampage, the 2011 parking lot shooting in Tucson, the 2012 Aurora theater attack, and the tragic 2012 school shooting in Sandy Hook were all perpetrated by individuals with a mental illness. *See* Pub.L. No. 110–180, § 2(9) (Findings), 122 Stat. 2559, 2560 (Congressional finding that the gunman involved in the shooting at Virginia Tech had "a proven history of mental illness"); COLLEEN CURRY, *Newtown Massacre Result of Mental Illness, Access to Guns, Death*

*Schall v. Martin*, 467 U.S. 253, 264 (1984) ("The legitimate and compelling state interest in protecting the community from crime cannot be doubted.") (internal quotation marks omitted); *Washington v. Glucksberg*, 521 U.S. 702, 735 1997) (recognizing suicide prevention as an "unquestionably important and legitimate" interest). For § 922(g)(4) to withstand strict scrutiny, however, the prosecution must also establish that the law is narrowly tailored to achieve its interests. Narrow tailoring is essentially a means-end calculation. *See Board of Trs. of State Univ. of New York v. Fox*, 492 U.S. 469, 480 (1989). This burden can be met even under strict scrutiny "based solely on history, consensus, and simple common sense." *Florida Bar v. Went For It, Inc.*, 515 U.S. 618, 628 (1995) (internal quotation marks omitted).

Under § 724.31, Johnson could have sought the restoration of his right to keep and bear arms by showing (a) that he will not be likely to act in a manner dangerous to the public safety and (b) that granting relief will not be contrary to the public interest. IOWA CODE § 724.31(4). Thus, Iowa's relief-from-disabilities statute significantly mitigates § 922(g)(4)'s burden on an individual's Second Amendment rights while furthering the government's substantial interest in protecting the public safety. Johnson, however, did not avail himself of the opportunity to seek to have his rights restored under that statute. As Judge Strand pointed out in his Report and Recommendation, "Johnson had more than four years before the acts alleged in the Indictment to file a petition under § 724.31(4), establish that he is not dangerous and obtain the restoration of his right to keep and bear

---

*Obsession*, ABC News (Nov. 25, 2013), http://abcnews.go.com/US/newtown-massacre-result-mental-illness-access-guns-death/story?id=21003690 (reporting that the perpetrator of the Newtown, Connecticut school shooting was afflicted by mental illness); GERALD LANDSBERG, *Shootings Show Need for Mental Health Care*, CNN (Sept. 19, 2013), http://www.cnn.com/2013/09/18/opinion/landsberg-shootings-mental-health/ (discussing the frequency with which mental illness serves as the backdrop to mass shootings in the United States).

arms." Report and Recommendation at 18. Accordingly, I agree with Judge Strand that § 922(g)(4) is not unconstitutional as applied to Johnson, and overrule Johnson's objection.

### III.  CONCLUSION

Therefore, for the reasons discussed above, I, upon a *de novo* review of the record, accept Judge Strand's Report and Recommendation and deny defendant Johnson's Motion to Dismiss.

**IT IS SO ORDERED**.

**DATED** this 16th day of February, 2016.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA